UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**JOSEPH C. HAJJAR, d/b/a JOE'S PUB & GRUB**    Chapter 7
    Debtor    Case No. 07-12068-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**JOSEPH BRAUNSTEIN, CHAPTER 7 TRUSTEE,**
    Plaintiff
v.    Adv. P. No. 07-1371
**JOSEPH C. HAJJAR, BARBARA A. NILES; and LORRAINE M. CARLSON,**
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matters before the Court are Cross-Motions for Summary Judgment with respect to the Trustee's Complaint for Authority to Conduct Sale Pursuant to 11 U.S.C. § 363(h) of Debtor's Real Property. The Debtor brought the Complaint against Joseph C. Hajjar (the "Debtor") and his two sisters, Barbara A. Niles ("Niles"), and Lorraine M. Carlson ("Carlson")(collectively, the "Defendants"). The Court heard the Cross-Motions on January 23, 2008 and took the matters under advisement.

There are no genuine issues of material fact, and the Motions are ripe for summary

1

judgment. *See* Fed. R. Civ. P. 56, made applicable to this proceeding by Fed. R. Bankr. P. 7056.[1] The issues presented include whether Niles has a valid life estate in real property, a two-family home, located at 82 Edinboro Road, Quincy, Massachusetts (the "Property"), and whether the Trustee is empowered to sell the Property under § 363(h). The Court answers the first question in the affirmative and the second question in the negative, with the caveat that the Trustee is authorized to sell the Debtor's remainder interest in the Property pursuant to 11 U.S.C. § 363(b).

## II. FACTS

The Debtor filed a voluntary Chapter 7 petition on April 6, 2007. On Schedule A-Real Property, the Debtor listed ownership interests in two properties as follows:

> ⅓ remainderman interest in 82 Edinboro Road, Quincy, MA, subject to a life estate of a 54 year old woman, the debtor's sister. The property is worth

---

[1] *See* Lassman v. Tosi (In re Tosi), __ B.R. __, 2008 WL 467664 (Bankr. D. Mass. Feb.22, 2008), in which the court stated:

> "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). As to issues on which the movant, at trial, would be obliged to carry the burden of proof, he initially must proffer materials of evidentiary or quasi-evidentiary quality-say, affidavits or depositions-that support his position. This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record.

Id. at *6 (citing Desmond v. Varrasso (In re Varrasso), 37 F.3d 760,763 (1st Cir.1994)(citations omitted, footnote omitted).

> approximately $450,000; [and]
>
> ⅓ remainderman interest in 86 Edinboro Road, Quincy, MA which is the debtor's personal residence and he has a homestead exemption.

The Debtor valued his one-third remainder interest in the Property at $6,000 and his one-third remainder interest in 86 Edinboro Road at $330,000. On Schedule D-Secured Creditors, the Debtor did not list any mortgagees or other liens affecting the Property or the adjacent property at 86 Edinboro Road. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor listed approximately $54,000 in credit card debt.

On August 15, 2007, the Court entered an order of discharge under 11 U.S.C. § 727(a). Approximately six weeks later, the Chapter 7 Trustee commenced the above-captioned adversary proceeding seeking authority to conduct a sale of the Property pursuant to 11 U.S.C. § 363(h).

In his Complaint, the Trustee alleged that the Debtor acquired title to the Property on October 31, 1952. Forty-eight years later on May 16, 2000, by Quitclaim Deed, the Debtor "for consideration paid, and in full consideration of one dollar ($1.000), grant[ed] to Joseph C. Hajjar, Barbara A. Niles, and Lorraine M. Carlson as tenants in common with quitclaim covenants the land in that part of Quincy, Norfolk County, Massachusetts, called Welling Park." Following a metes and bounds description of the Property, the deed then provided:

> The grantor hereby grants to Barbara A. Niles the right to the use and enjoyment of the above-described premises for and during her lifetime or as long as she so desires with the provision that said life tenant shall be responsible for the payment of taxes and maintenance of said premises using the period of said occupancy, specifically denying any right by the grantor

to partition.

At the hearing, counsel to the Debtor made an offer of proof that both the Debtor and the attorney who drafted the deed intended that the Debtor grant his sister, Niles, a life estate. The Trustee did not rebut the offer of proof and did not argue that the offer of proof raised a genuine issue of material fact.

## II. DISCUSSION

"Deeds should be 'construed as to give effect to the intent of the parties, unless inconsistent with some law or repugnant to the terms of the grant.'" Commercial Wharf E. Condominium Assn. v. Waterfront Parking Corp., 407 Mass. 123, 131, 552 N.E.2d 66 (1990)(quoting Harrison v. Marcus, 396 Mass. 424, 429, 486 N.E.2d 710 (1985), and Bass River Sav. Bank v. Nickerson, 303 Mass. 332, 334, 21 N.E.2d 717 (1939)). *See also* Dedrick v. Commissioner of Div. of Med. Assistance, 65 Mass. App. Ct. 1120, 2006 WL 473846 at * 2 (2006).

In the Quitclaim Deed executed by the Debtor, the Debtor purports to convey the Property to himself and his sisters as tenants in common. Subsequently, he purports to grant a life tenancy to his sister, Barbara Niles. In Dedrick, the court interpreted a deed with a similar problem. It stated:

> Dedrick claims that the warranty deed conveyed the subject property in fee simple absolute to the Trust, leaving her without any legal interest in the subject property to which a lien may attach. In support of her claim, Dedrick argues that the granting clause did not refer to a "life estate." Rather, that phrase is located at the bottom of the deed, away from the granting clause. We note, however, that the description of the boundaries of the property follow the granting clause in different font than that of the granting clause, but that the phrase "life estate as more fully described in the

4

contemporaneously executed . . . Trust" returns to the same font and style as the granting clause. If, at the time the deed was executed, the Dedricks intended to convey a fee simple absolute to the Trust, they would not have referred to a "life estate" in a different portion of the deed.

Although the Trustee's position that the Debtor created a tenancy in common for the entire Property as opposed to a tenancy in common with respect to the remainder interests subject to the life estate is not frivolous and supports his ability to sell the Property under section 363(h), the Court finds that the language purporting to grant Niles "the right to the use and enjoyment" of the Property and the reference to her as a "life tenant" must have independent meaning. That language, coupled with the reference to Niles's obligation to pay taxes and to maintain the Property and the Debtor's relinquishment of a right to partition, compels the conclusion that the Debtor intended to, and did, create a life estate in favor of Niles.

In Bernat v. Kivior, 22 Mass. App. Ct. 957 (1986), the court was required to determine whether a valid life estate existed in the context of a petition for partition. The court framed the issue as follows with reference to the deed:

> Whatever interest Helen has, she acquired under a deed dated May 10, 1963, from Walter Kivior. We proceed to analyze that instrument. Harrison v. Marcus, 396 Mass. 424, 428, 486 N.E.2d 710 (1985). The deed conveyed 207 acres and a dilapidated residence to Alice E. Hadala, Frances Varno, Celia L. Bernat, and Mildred D. Lagowski as joint tenants. Following a metes and bounds description of the property, record references, and statement that the consideration was less than $100, the deed contained the following one-sentence paragraph:
>
>> "Said premises are conveyed subject to the rights of Helen V. Kivior to occupy the granted premises for the rest of her life."

22 Mass. App. Ct. at 957-58(footnote omitted). The court began its analysis by observing

that the deed was inartfully drafted, suggesting "[a] deed with a granting clause conveying to "Helen V. Kivior for life, the remainder to Alice E. Hadala, Frances Varno, Celia L. Bernat and Mildred D. Lagowski, as joint tenants" would have been a clearer manifestation of intent." Id. at 958. The court found, however, that "the reservation of "rights . . . to occupy the granted premises for the rest of her life" conferred a life estate." Id. (citing Thayer v. Shorey, 287 Mass. 76, 78 (1934), and Langlois v. Langlois, 326 Mass. 85, 86-87 (1950)). The court then dismissed the petition for partition because Helen had an exclusive possessory interest conferred by the life estate, and, thus, there was no present, possessory interest in Helen's siblings to support the petition for partition. Id. at 958. Although the language employed in the deed examined by the court in Bernat is substantially similar to the language employed by the Debtor, the instant case is distinguishable from Bernat v. Kivior in that the Debtor conveyed the Property to himself and both of his sisters as tenants in common, rather than to himself and Lorraine only, either as tenants in common, or, more accurately, as remainderman. Nevertheless, the decision lends support to Defendants' position.

In Hershman-Tcherepnin v. Tcherepnin, 70 Mass. App. Ct. 218 (2007), the court analyzed a will in which the testator "bequeathed one-fifth of the family home and 'the right to remain there for as long as she desires' to his friend and recent bride," as well as one-fifth of the family home to each of his children by an earlier marriage. 70 Mass. App. Ct at 218. In addressing the children's argument that all five devisees had a present possessory interest, the court observed that the will was not the work of an "accomplished

6

conveyancer" and that the testator did not use "the classic formulation of a life estate." Id. at 222. It also observed:

> The testator gave one-fifth of the property to the petitioner and each of the four children. These bequests were not described as remainder interests. They appear to make a present transfer of the property to the five devisees. This would ordinarily make them tenants in common, with the right to use and occupy the property subject to the equal rights of the other tenants. *See* G.L. c. 184, § 7 ("A conveyance or devise of land to two or more persons ... shall create an estate in common"). *See also* Tucci v. DiGregorio, 358 Mass. at 497, 265 N.E.2d 570; Brady v. City Council of Gloucester, 59 Mass.App.Ct. 691, 695, 797 N.E.2d 479 (2003). The question is how these provisions are affected by the additional language allowing the petitioner to remain in the home so long as she desires. The petitioner contends that this additional clause provides her with a life estate and thereby renders the other bequests only remainder interests.

Id. In a well-reasoned and thorough decision, the court in Tcherepnin examined cases from Massachusetts and other jurisdictions in which language similar to that employed by the testator was construed as providing either a limited right of occupancy or a defeasible life estate. The court determined that the language used by the testator ("the right to remain there for as long as she desires") did not create a life estate and provided the petitioner with only a one-fifth present possessory interest as a tenant in common with the testator's children. Id. at 225.[2] It reasoned: "Unlike the situation in Wilmarth v. Bridges,

---

[2] The court in Tcherepnin, discussed two Supreme Judicial Court cases, stating:

In Wilmarth v. Bridges, 113 Mass. 407, 408, 410 (1873), the testator bequeathed to his daughter, "in view of her misfortunes, present circumstances, and her attention to and care of her parents, the use and improvement of all my real estate . . . so long as she chooses personally to occupy and improve the same; on condition of her keeping the building in repair and paying the taxes and cost of insurance . . . ." The Supreme Judicial Court, without elaboration, interpreted this bequest to provide a

7

113 Mass. at 408, the testator here did not provide the petitioner with the responsibility of maintenance and the payment of taxes and insurance. Thus, the will does not demonstrate an intention to provide the petitioner with control over and responsibility for the property." Id. at 226 (footnote omitted, citations omitted). The court reinforced its determination with its view that the testator intended to provide equally for his wife and children because one child was living in the family home at the time of his death.

In contrast to the situation in Tcherepnin, neither the Debtor nor Carlson live in the Property. Rather, the Property is Niles's home. The Court finds that like the situation in Tcherepnin, the language used in the deed was not precise. The Court, however, determines that the intent to create a defeasible life estate is clear. As noted above, not only was Niles referred to as a life tenant, she was charged with the responsibility of paying the taxes and maintaining the premises, as was the case in Wilmarth. Moreover, the Debtor denied himself the right to partition the Property which is consistent with an intention to create a life estate in favor of his sister, Niles, but not with an intention to create a tenancy in common with both sisters. The Court finds that the Debtor intended to give Niles a defeasible life estate. In the event Niles were to cease occupancy, ownership of the

---

life estate defeasible by termination of occupancy or death. In Hesseltine v. Partridge, 236 Mass. 77, 79, 81, 127 N.E. 429 (1920), however, the testator's devise to his widow of " 'the use and occupation' of his house in Melrose, 'so long as she shall desire to reside therein,' " was described as "an interest in real estate of an unascertained, and probably indeterminate, value."

70 Mass. App. Ct. at 223.

8

Property would revert to the remainderman, the Debtor and Carlson, together with Niles, as tenants in common.

Having determined that Niles has a life estate, the Court turns to section 363(h) of the Bankruptcy Code, which provides:

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a *tenant in common, joint tenant, or tenant by the entirety*, only if–
>
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h). The Trustee has the burden of establishing all four elements required under § 363(h). Kovacs v. Sargent (In re Sargent), 337 B.R. 661, 666 (Bankr. N.D. Ohio 2006).

Section 363(h) identifies three forms of co-ownership: tenancies in common, joint tenancies and tenancies by the entirety. "This plain language forces the conclusion that the three cotenancies are the only three in which the co-owner's interest may be sold without his consent." Geddes v. Livingston (In re Livingston), 804 F.3d 1219, 1223 (11th Cir. 1986).

9

*See also* Rubin v. Burns (Matter of Burns), 73 B.R. 13, 15 (Bankr. W.D. Mo. 1986). Because a life tenancy is outside the scope of § 363(h), the Trustee has failed in his burden and may not sell the Property.

Although the Debtor does not have a present possessory interest, and the Trustee may not sell the Property under § 363(h), the Debtor owns a one-third remainder interest in the Property which is property of the estate. *See* 11 U.S.C. § 541(a)(the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."). *See also* Sargent, 337 B.R. at 665 ("It is . . . well-established that encompassed within estate property will be a debtor's vested remainder interest in a life estate, thereby making the Debtor's remainderman interest in her mother's property subject to administration by the Trustee."); Weddle v. Nunley (In re Weddle), 43 B.R. 415 (Bankr. W.D. Va. 1984)("A vested remainder is subject to liability for the remainderman's debts. The court may decree that the vested interests be sold in order to satisfy debts.").

The Trustee argues that the unique circumstances of this case, namely that the Property is a two-family home, warrant deviation from the language of the Bankruptcy Code and the holding in Sargent. While the Court appreciates the Trustee's efforts on behalf of the Debtor's creditors, the Court is not persuaded that "unique circumstances" justify the relief requested in view of the language utilized by Congress.

The Trustee also argues that he may sell the interest of the Debtor free and clear of the interest of a third party in order to provide value to the estate and satisfy the claims of creditors pursuant to 11 U.S.C. § 363(f)(4), citing In re Rose, 113 B.R. 534 (W.D. Mo. 1990),

10

a case in which parents, Frank and Irene Rose, deeded a farm to their son and his spouse, debtors Donald and Donna Rose, "reserving 'a life estate in the . . . property for and during the natural life of each, together with the power to exchange, mortgage, sell and convey the fee.'" Id. at 536.  The debtors lived on the farm and had done so for at least thirty years.  On the same day the debtors filed their bankruptcy petition, Irene Rose (her husband had died) recorded a deed transferring title to the farm to her grandchildren in violation of the automatic stay.  The trustee filed a complaint seeking partition.  The district court affirmed the bankruptcy court's ruling permitting partition, finding that under 11 U.S.C. § 363(f)(1), "'applicable nonbankruptcy law'" in the form of a statute permitted the sale of such property free and clear of appellant's interest.  Id. at 538.[3]  The court also relied upon 11 U.S.C. § 363(f)(4) without any discussion of its applicability.

The Court finds the cases cited by the Trustee to be distinguishable.  Significantly, after review of the case law in Massachusetts, the Court finds that the existence of the life

---

[3] Specifically, the court cited R.S.Mo. § 528.010, which provides that property subject to a life estate can be sold if it can be shown that "the life or other estate of immediate enjoyment is burdensome and unprofitable for [sic] that the cost of paying the taxes and assessments thereon and holding, maintaining, caring for and preserving the lands from waste, or injury, and deterioration, exceeds the reasonable value of the rents and profits thereof. . . ."  The Trustee cited no comparable Massachusetts statute, and, in Massachusetts, a petition for partition cannot be maintained by a remainderman.  See Francis T. Talty, Patricia Sullivan, Alan L. Braunstein, *Person Not Entitled to Partition*, 5 Mass. Prac. § 16:4 (4th ed.)(citing Johnson v. Johnson, 89 Mass. 196 (1863)).

11

estate is not in bona fide dispute. Thus, the trustee is entitled to sell the Debtor's in the Property subject to the other interests.

### III. CONCLUSION

In accordance with the foregoing, the Court shall enter an order granting the Motion for Summary Judgment filed by the Debtor and Niles and denying the Motion for Summary Judgment filed by the Chapter 13 Trustee.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: April 8, 2008
cc: Peter Sutton, Esq., Anthony P. Alessi, Esq., MaRjorie A. Adams, Esq.